**WINGSCO ENERGY ONE, et al., Plaintiffs,**

v.

**VANGUARD GROUPS RESOURCES 1984, INC., et al., Defendants.**

Civ. A. Nos. H–86–452, H–86–4236, H–86–4254, H–86–4255, H–86–4286, H–86–4288, H–86–4312 and H–86–4338.

United States District Court, S.D. Texas, Houston Division.

Aug. 25, 1988.

Ronald J. Restrepo, Andrew Harvin, Hutcheson & Grundy, Edward K. White, Houston, Tex., for plaintiffs.

Cynthia E. Joyce, William B. Chaney, Shank, Irwin, Coant & Lipshy, Dallas, Tex., for Nortwestern Nat. Ins. Co. of Milwaukee, Wis.

Max Hendrick, III, Vinson & Elkins, Houston, Tex., for First City Bank—Westheimer Plaza.

Darryl W. Malone, Woodard, Hall & Primm, Houston, Tex., for Chrysler Capital Corp. (formerly E.F. Hutton Credit Corp).

Ward A. Busey, Houston, Tex., pro se.

David T. Maddox, Calvin, Dyleswki, Gibbs, Maddox, Russell & Verner, Houston, Tex., for Greycas, Inc., Greyhound Leasing & Finance Corp.

Michael H. Moirano, Atty.-in-charge, Dahl & Moirano, Chicago, Ill., for GAF Finance Corp.

Mark Singleton, Houston, Tex., pro se.

Joan Kehlhof, Alletag, Jones & Eyberg, Houston, Tex., for Jack Singleton.

Regina Giovannini, Baker, Brown, Sharman & Parker, Houston, Tex., for David S. Jeffcott.

## MEMORANDUM AND ORDER

NORMAN W. BLACK, District Judge.

This order relates to the liability of Greycas, Inc. and Greyhound Leasing & Financial Corporation (collectively "Greycas"). The Court adopts the factual summary and procedural history set forth in the order signed August 11, 1988, by reference, 699 F.Supp. 1232.

As stated in the Court's August 11, 1988, order, counsel have agreed to dismiss the claims brought pursuant to Sections 12(1) and 12(2) of the Securities Act of 1933 against Greycas. *See also, Pinter v. Dahl,* — U.S. ——, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988) (liability for violation of § 12(1) available only against person who solicits securities purchase motivated at least in part by desire to serve own financial interest or that of a prior security owner).

Plaintiffs and Greycas have both filed motions for summary judgment. Although the Court is inclined to grant Plaintiff's motion in part and Greycas' motion in part, both motions for summary judgment are DENIED for the reasons stated herein.

## I. *Aider and Abettor.*

■ The applicable standard for determining whether Greycas aided and abetted Vanguard's violation of Rule 10b-5 is set forth in *Bane v. Sigmundr Exploration,* 848 F.2d 579, 581 (5th Cir.1988). It is hardly controverted that Vanguard (VGI or VRI) committed a primary violation of Rule 10b-5. The Confidential Memorandum represented that the investor's money would be returned if the program was not fully subscribed by December 31, 1984. It is uncontroverted that L-9 through L-12 were not fully subscribed by that date.

Fact questions regarding the second and third prongs of the *Bane–Woodward* test remain. The summary judgment evidence shows that on January 11, 1985, Greycas may have known that the L-9 through L-12 partnerships were not fully subscribed. Greycas had closed those deals on December 28, 1984, but had not released the standby irrevocable letters of credit. Greycas knew that full subscription by December 31, 1984, was necessary for activation of the partnerships. Scherotter Dep.; *see also* Confidential Memo. Greycas may have rendered substantial assistance to Vanguard's 10b-5 violation when it released the letter of credit in the undersubscribed L-9 program. L-9 was only fully subscribed when investors were moved into that program in March of 1985. The Court is inclined to grant Plaintiffs' motion for summary judgment based on these facts. However, some doubt exists regarding whether Greycas *knowingly* rendered substantial assistance and whether Greycas' actions caused the investors' loss.

Greycas also appears to have knowingly assisted in a securities law violation when they consented to the switch of investors from the L-10 through L-12 programs to the L-9 program. Greycas' consent clearly indicates that Greycas knew those four programs, L-9 through L-12, were undersubscribed on December 31, 1984. Greycas should have refused to permit the switch and to release the letter of credit for the L-9 program. Instead, Greycas' counsel, Mr. Kosacz, and Mr. Sonfield prepared documents to switch investors from one program to another. This alleged participation, if found true at trial, might constitute aiding and abetting Vanguard's misrepresentations and a violation of Rule 10b-5.

In any case, the practices that Greycas allegedly were involved in do not constitute typical leading practices or ordinary business practices. There is sufficient evidence present to deny Greycas' motion for summary judgment and possibly to support granting a directed verdict for Plaintiffs at trial.[1]

## II. *Control Person.*

The Court is inclined to grant Greycas' motion for summary judgment based on control person liability. *See G.A. Thompson & Co. v. Partridge,* 636 F.2d 945, 957 (5th Cir.1981) (control means possession, direct or indirect, of the power to direct or cause direction of management or policies of Vanguard). The evidence appears to indicate that Greycas did not have the power to control VGR or VRI. The mere possession of power by a lender over a borrower is insufficient to establish liability. *Metge v. Baehler,* 577 F.Supp. 810, 818 (D.Iowa 1984) rev'd other grounds, 762 F.2d 621 (8th Cir.1984). However, the Court will reserve judgment on this claim due to the unusual participation and leading practices performed by Greycas.

## III. *Integration.*

For the same reasons that Plaintiff's motion based on integration was denied on

---

1. Plaintiffs also argue that the delayed funding of the limited partnerships resulted in the loss of oil and gas leases. This argument is specious since Mr. White's own testimony indicates that the wells were drilled in a timely manner. Mr. Barrow's testimony indicates that there were sufficient funds available to complete two wells. Completion of two wells would have held the entire lease. Barrow Dep. V. pg. 140, 16–25, pg. 141. The Court notes that the delay in funding of the L-8 and L-9 partnerships due to placement of the Greycas funds in standby irrevocable of credit is not a cause in fact of the investors' loss. The cause of the investors' loss, if any, is the possible improper activities of Vanguard, First City, Northwestern, and Greycas. The Court has serious reservations regarding whether the aiding and abetting by Greycas caused the L-8 investors' loss and reserves the causation issue for trial.

August 11, 1988, the motion against Greycas is DENIED. The Court does note, however, that the Naughton memorandum to the Greycas Credit Committee dated December 20, 1984, strengthens Plaintiffs' position. That memorandum states that Vanguard L–8 through L–12 "although distinct, are identical, both in form and substance." The memorandum does not overcome the apparent absence of loss causation resulting from integration.

## IV. Holder in Due Course.

█ Plaintiffs contend that Greycas is not a holder in due course of the investor notes. *See* Tex.Bus. & Comm.Code Ann. § 3.302; *Behring International v. Greater Houston Bank*, 662 S.W.2d 642 (Tex. App.—Houston, 1983, writ dis'm w.o.j.). Unless Greycas is a holder in due course, Greycas only takes the investor notes subject to all valid claims and defenses to them. *Id.* at § 3.306. There is a fact question presented regarding whether Greycas, assignee of the investor notes, was aware of Plaintiffs' defenses to the notes. Although the evidence points towards knowledge on the part of Greycas, the Plaintiff's motion is DENIED at this time.

## V. Fraud and Conspiracy.

█ The Court is not inclined to grant Plaintiffs' or Greycas' motion on the conspiracy claim. The agreement to substitute letters of credit for investor notes at the December 28, 1984, closing may not be an unlawful act. See the Court's August 11, 1988, order. The second alleged unlawful act, deferment of financing, may not be illegal since Greycas placed the financing in escrow on December 28, 1984. The Court is, however, concerned about the deletion of certain portions of the investor notes after the investors signed those notes. Finally, the Court notes that the preparation of the investor switch document in March of 1985, by Greycas and others might constitute civil conspiracy. *See Riquelme Valdes v. Leisure Resource Group, Inc.*, 810 F.2d 1345, 1351 (5th Cir.1987). The Court finds that Greycas' alleged participation in the deletion of portions of the notes and the switch of investors precludes granting summary judgment at this time.

Likewise, the fraud by conduct claim has similar problems which preclude granting summary judgment.

## VI. Usury.

Plaintiffs' motion on the usury issue is DENIED. Plaintiffs may not have standing to assert a claim for usury under Arizona law (it is uncontroverted that the choice of law provision in the investor notes stipulates Arizona law). *See Hatton v. Greenberg*, 9 Ariz.App. 327, 451 P.2d 905 (1969) (privity required). The notes Plaintiffs signed are between Plaintiffs and the limited partnership. Greycas is only an assignee of the note. The Court also notes that the interest charged in the investors' notes may not be usurious. Ariz.Rev.Stat.Ann. 44–1202(A); *Transamerica Financial Corp. v. Superior Court*, 155 Ariz. 327, 746 P.2d 497 (App.1987).

## VII. Other Claims.

The motions for summary judgment on claims under the Texas Securities Act are denied for the same reasons given for denial of the parallel claims under Federal law.

The parties have not concentrated on the loss causation issue. Although loss causation appears to exist regarding investors in the L–9 program, loss causation for investors in the L–8 program may be lacking.

## VIII. Conclusion.

For these reasons Greycas' motion for summary judgment and Plaintiffs' motions for summary judgment are DENIED subject to being reurged as motions for a directed verdict at trial.